UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

| | |
|---|---|
| **TONYA LYNN CHAPMAN**<br>    **Plaintiff,**<br><br>V.<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br>    **Defendant.** | **CIVIL ACTION NO. 0:14-CV-168-KKC**<br><br><br>**<u>OPINION AND ORDER</u>** |

\* \* \* \* \* \* \*

The plaintiff Tonya Lynn Chapman brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for supplemental security income and disability insurance benefits. The Court, having reviewed the record, will reverse the Commissioner's decision and remand this matter for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

In denying Chapman's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Chapman has not engaged in substantial gainful activity since January 4, 2012, the application date. [TR 13].

At step two, the ALJ determined that Chapman suffers from the following severe impairments: valvular heart disease, fibromyalgia, degenerative disc disease of the cervical spine, and irritable bowel syndrome. [TR 13].

At step three, the ALJ found that Chapman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 13–14].

Before proceeding to step four, the ALJ determined that Chapman had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ determined that Chapman had the following limitations:

> occasionally climb stairs, but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, or crouch, but never crawl. She should avoid concentrated exposure to extreme cold and heat, wetness, and fumes, odors, dusts, gases, poor ventilation, etc., and even moderate exposure to vibration and hazards (moving machinery, unprotected heights, etc.).

[TR 14].

At step four, the ALJ found that Chapman was able to perform her past relevant work as a waitress and, thus, she is not disabled. [TR 19].

## ANALYSIS

Chapman's most compelling argument is that the ALJ erred in failing to give adequate reasons for discounting the opinion of her treating physician, Dr. James Saltz, who opined that Chapman could work two hours in an eight-hour day; stand, walk, or sit less than two hours each in an eight-hour day; and occasionally lift ten pounds. [TR 509]. Dr. Saltz further opined that Chapman could only occasionally bend, stoop, balance, climb ladders and stairs and that Chapman would be absent more than four days a month due to her conditions. [TR 509].

ALJs must "evaluate every medical opinion [they] receive" about a claimant and give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c), (c)(2). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id*.

The ALJ gave "little weight" to Dr. Saltz's opinion, finding his recommended limitations "extreme given her poor work history, good activities of daily living, and minimal treatment." [TR 18]. This Court cannot discern what the ALJ intended by referencing Chapman's "poor work history," and neither the opinion, nor the Commissioner provides any further elucidation. Moreover, if anything, *poor* work history would support Dr. Saltz's opinion. As to Chapman's purportedly good activities of daily living—regardless of whether they can be described as "good"—neither Chapman's function report, nor her hearing testimony contradict Dr. Saltz's opinion. *See* SSR 96-2p, 1996 WL 374188 at *4 ("a treating source's medical opinion on what an individual can still do . . . will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are *greater* than those provided in the treating source's opinion") (emphasis added). Chapman reported that her daily activities consist of: (1) feeding her pets and taking them outside to use the bathroom with the assistance of her son when needed; (2) preparing her meals, mostly using the microwave; (3) cleaning her home by trying to do "a little every day"; (4) grocery shopping for one to two hours, when necessary, with the aid of her sons due to her lack of a license; (5) reading, watching television, and talking on the phone. [TR 37–42; 217–24]. Significantly, Chapman also reported the following limitations: (1) difficulty sleeping due to neck pain and corresponding nerve issues; (2) difficulty caring

3

for her hair due to neck and arm pain; (3) inability to do yard work or repairs; (4) and cessation of her sewing and walking hobbies due to her impairments. [TR 39, 41–42, 217–24]. This testimony is not indicative of any activities requiring "greater" functioning capacity than Dr. Saltz attributed to Chapman.

As to Chapman's "minimal treatment," the Commissioner contends that this refers to Chapman's alleged "sporadic" and "conservative" treatment. In support, the Commissioner states that at the time Dr. Saltz completed his "opinion in February 2013, [he] had not seen Plaintiff in 10 months[.]" (DE 11 at 8.) The record reveals that in fact Dr. Saltz completed his opinion in March of 2013, and, more importantly, Chapman last saw him October 13, 2012. [TR 509, 512]. In other words, the gap between Dr. Saltz recommendations and his last examination of Chapman is about half what the Commissioner suggests. Furthermore, it is unclear why the ALJ would have offered such an oblique reference to this gap if it were a basis for his discounting Dr. Saltz's opinion. It seems likely he concluded, as this Court does, that a five month gap was irrelevant to Dr. Saltz's ability to offer an opinion on Chapman's impairments. Such a conclusion is supported by Chapman's twenty year treatment relationship with Dr. Saltz and his thorough diagnoses of her relevant impairments during that period.

While the Commissioner's argument on the allegedly "conservative" nature of Chapman's treatment squares better with the ALJ's offered conclusion, it fares no better in finding support in the record. Both the ALJ and the Commissioner point out that Chapman used no prescription pain medication. [TR 18]. However, as both Chapman's testimony and the medical records illustrate, she discontinued use of prescription pain relievers because of debilitating nausea side effects. [TR 36–37, 323]. Agency regulations require consideration of "[t]he type, dosage, effectiveness, and *side effects* of any medication[.]" 20 C.F.R. §

4

404.1529(c)(3)(iv). Given that the ALJ limited his explanation to describing the treatment as minimal, this Court is unable to discern precisely how this factored into the analysis— a deficiency in and of itself problematic for the good reasons requirement. Some clue might be found in the ALJ's additional use of the term "minimal" in describing the evidence regarding Chapman's decision to take time to consider "three-level anterior cervical discectomy and fusion from C4 through C7" surgery as recommended by Dr. Bernard. [TR 16–17].

This Court cannot find Chapman's failure to assent to spinal fusion surgery was a "good reason" to give little weight to her treating physician's opinion. Cases finding "minimal treatment" supportive of an ALJ's opinion have relied on "conservative treatment [that] was successful." *See, e.g.*, *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, recommended spinal fusion surgery and *unsuccessful* prescription pain medications are readily distinguishable from the treating physician's opinion in *Villareal*, who opined that "when the patient does exercise mildly and stays on his diet, his blood sugar will stay down." *Id*. The *Villareal* claimant's failure to follow such minimal restrictions supported discounting his complaints of debilitating diabetes. *Id*. However, it cannot seriously be maintained that failure to undergo major surgery, or to endure debilitating nausea reflect an equally "conservative" approach. Thus, neither the ALJ, nor the Commissioner has provided a reasonable explanation for the finding that "minimal treatment" was a good reason to discount Dr. Saltz's opinion.

> The Sixth Circuit has reversed a denial of benefits under similar circumstances:
>
>> the ALJ did not give good reasons for this conclusion. In particular, the ALJ failed to clarify whether [the Treating Physician's] opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or was "inconsistent with the other substantial evidence in [the]

5

> case record," 20 C.F.R. § 404.1527(d)(2), did not identify the evidence supporting such a finding, and did not explain its application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to [the Treating Physician's] opinion. Reversal is therefore required.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). Because the "good reasons" requirement is a mandatory procedural protection, this Court cannot excuse its denial even if there is "sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Id.* Accordingly, this matter will be remanded to the Commissioner for further consideration of Dr. Saltz's opinion.

Chapman also argues that the ALJ erred by failing to include RFC limitations for her numbness and pain in her arm and hands, and by relying on a non-examining physician who did not have the opportunity to review the complete record. These issues cannot be addressed without first resolving the weight Dr. Saltz's opinion should be afforded.

For all these reasons, **IT IS HEREBY ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 10) is **GRANTED** to the extent that the plaintiff requests that this matter be remanded to the Commissioner;

2. The defendant's motion for summary judgment (DE 11) is **DENIED**;

3. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is **REMANDED** to the Commissioner; and

4. A judgment will be entered contemporaneously with this order.

Dated March 16, 2016.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY